# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (NORTHERN DIVISION)

| | |
|---|---|
| **DEVIN JONES**<br>5038 Plymouth Road<br>Baltimore, Maryland 21214<br>*Resident of Baltimore City* | Civil Action No.: |
| Plaintiff, | Collective Action Claim |
| ***Individually and on Behalf of All Similarly Situated Employees*** | |
| v. | <u>Jury Trial Requested</u> |
| **FIDELITY RESOURCES, INCORPORATED**<br>1018 Cromwell Bridge Road<br>Towson, Maryland 21286 | |
| Serve: Chris Duru<br>6505 Sanzo Road<br>Apartment F<br>Pikesville, Maryland 21209 | |
| Defendant. | |

## <u>COLLECTIVE ACTION COMPLAINT FOR WAGES OWED</u>

DEVIN JONES, Plaintiff, by and through his undersigned counsel and The Law Offices of

Peter T. Nicholl, hereby submits his Complaint against FIDELITY RESOURCES,

INCORPORATED, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable

attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as

amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages,

interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code

Ann., Lab. & Empl. §§ 3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, interest, treble

damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, states as follows:

## **INTRODUCTION AND BACKGROUND**

Defendant provides home healthcare services to persons with special needs. These persons suffer from various physical and cognitive disabilities, mental illnesses and other conditions which make it challenging or impossible for these individuals to fully care for themselves on their own. Defendant hired Plaintiff and other similarly situated employees to assist with providing care to these individuals.

Plaintiff and other similarly situated employees worked as caregivers or home healthcare specialists (hereinafter, "caregivers") for Defendant. Plaintiff and others similarly situated performed the tasks generally associated with both direct care and support staff. Plaintiff's and other caregivers' tasks primarily entailed monitoring the physical and mental condition of Defendant's clients. Personal services such as assistance with bathing, dressing and grooming were other tasks that Plaintiff and other caregivers provided. Their duties also involved providing laundry and household services when clients were incapable of performing these tasks themselves. Plaintiff and other caregivers would also routinely accompany their clients to medical appointments.

Defendant's clients needed constant care and supervision. Plaintiff and other similarly situated employees were required to work overnight and weekend shifts to ensure that their clients were constantly monitored. For safety reasons, Plaintiff and other caregivers were not permitted to sleep during their shifts. These shifts were often of substantial length. For instance, weekend shifts could last as long as forty-eight (48) hours. Consequently, Plaintiff and other caregivers

consistently worked well over forty (40) hours each week. Plaintiff and others routinely worked as many as sixty (60) to eighty (80) hours weekly. There were occasions when Plaintiff and others similarly situated worked even more.

These hours were generally part of Plaintiff's and other caregivers' regular schedules. Defendant set these schedules. At all times relevant, Defendant was well aware of the excessive hours worked by Plaintiff and others similarly situated. Working these excessive hours did not impact the manner in which they were paid.

Defendant failed to properly compensate Plaintiff and other similarly situated employees. Defendant did not pay Plaintiff and other similarly situated caregivers overtime wages. Plaintiff and other caregivers received only their regular rate of pay for all hours worked. Plaintiff and others similarly situated never received "time and a half" their regular rates of pay for hours worked over forty (40) in a workweek.

Through these unlawful practices, Defendant evaded the payment of wages owed to Plaintiff and others similarly situated. This conflicts with the standards set forth by the FLSA, MWHL and the MWPCL. To date, Defendant is engaged in this unlawful activity.

## THE PARTIES

1.     Plaintiff Devin Jones (hereinafter, "Plaintiff") is an adult resident of Baltimore City, Maryland.

2.     Defendant Fidelity Resources Incorporated (hereinafter, "Defendant") is an incorporated non-profit business. Defendant's principle office is in Baltimore County, Maryland.[1]

---

[1] Hereinafter, any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation either, explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

3.      Defendant provides home healthcare services to persons with special needs. Defendant provides a range of care options to its clients.  This includes family support services and community supported living arrangements. Defendant also offers mental health, language impairment and neurological care.

4.      To implement its services, Defendant owns and operates assisted living facilities throughout the state of Maryland.

5.      Plaintiff and other caregivers' duties were performed at these facilities.

6.      Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL.

7.      Defendant is subject to the FLSA, MWHL and the MWPCL.  Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

8.      At all times relevant to this Complaint, Plaintiff engaged in interstate commerce. This is based on the nature of the duties performed by Plaintiff as part of his employment with Defendant.

9.      Plaintiff worked for Defendant who, at all times throughout Plaintiff's employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

10.     At all times relevant, Plaintiff and others similarly situated worked as non-exempt employees for Defendant.  The duties assigned to Plaintiff and all others similarly situated do not satisfy the duties tests contained within the exemptions specified in the FLSA, MWHL, or the MWPCL.

11.     From approximately November 1, 2012 until October 1, 2016, Plaintiff was employed with Defendant.

12.     Plaintiff performed duties specific to providing supervisory care services.

13.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiff and others similarly situated.

14.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiff and other similarly situated employees.

15.     Defendant possessed and exercised authority to determine the hours worked by Plaintiff and others similarly situated.

16.     Defendant had the authority to control Plaintiff's tasks and the tasks of others similarly situated.

17.     Defendant had and exercised the power and authority to change the course of Plaintiff and other similarly situated employees' duties.

18.     Plaintiff and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

19.     Defendant made all decisions relating to Plaintiff and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

20.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

21.     Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

22.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

23.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

24.     This Honorable Court has personal jurisdiction over Defendant; Defendant is a corporation incorporated under the laws of Maryland and Defendant conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

25.     Defendant is in the business of providing home healthcare services to persons with special needs. Defendant's services consist of preparing individual behavioral treatment plans for those who suffer from a variety of medical conditions, including mental disability and illness. These individuals are Defendant's clients, whom reside on Defendant's premises.

26.     Defendant's purpose is to provide these individuals with the skills needed to function independently. In order to accomplish this goal, Defendant is charged with connecting clients with services in the community. This includes ensuring that clients are compliant with their treatment programs and medication plans.

27.     Defendant is responsible for tracking the services that are provided to clients. Billing requirements necessitate that Defendant regularly submit invoices detailing these services to one or more government agency.

28.     Defendant hired Plaintiff and other similarly situated employees to work as caregivers.  Plaintiff and others performed duties relating to the care of Defendant's clients. They were employed as direct care and support staff.

29.     Plaintiff and other caregivers' primary purpose was to ensure that Defendant's clients were able to maintain their lifestyles.  Their role was to encourage and assist clients in learning how to perform their daily activities on their own.

30.     Plaintiff and others similarly situated were also charged with monitoring a client's physical and mental condition.  Based on their progress, Plaintiff and other caregivers would work with clients to integrate them into the community and teach them the skills necessary to live with a degree of autonomy.

31.     Plaintiff and other similarly situated employees would also introduce clients to community sponsored services.  This was for purposes of establishing various mechanisms that could be used by clients to maintain their mental and physical well-being.

32.     Many of these services concerned career building and educational opportunities. Exercise, dietary issues and personal hygiene were also the focus of these services.

33.     Through the use of various techniques, Plaintiff and other caregivers would teach clients how to care for themselves.  The techniques focused on the manner in which clients interacted with others, helping clients with building confidence and to function independently. The goal was to integrate Defendant's clients back to the general public.

34.     Plaintiff and other similarly situated employees would also assist clients with the maintenance of their homes.  This entailed basic housekeeping and laundry services.

35.     Plaintiff and others also performed general cleaning when needed, which could include cleaning dishes after meals, cleaning the floor, laundry, or changing linens.

36.     Clients were required to maintain a certain level of hygiene.  Plaintiff and other similarly situated employees had to ensure that a safe and healthy environment was maintained in a client's home.  Plaintiff and others similarly situated were required to follow prescribed security precautions and adhere to relevant federal and state safety standards.

37.     Preparing meals or assisting clients with meal preparation was another routine task performed by Plaintiff and other caregivers.

38.     Plaintiff and others similarly situated would also run errands with clients.  This primarily consisted of shopping for food or other household items.

39.     Transporting and accompanying Defendant's clients to their medical appointments was another one of Plaintiff and other caregivers' regular duties.

40.     Plaintiff and others would also assist clients with various aspects of personal care, including bathing, dressing or grooming clients when needed.

41.     Plaintiff and others similarly situated were also charged with reminding patients to take their medications.

42.     While performing their daily tasks, Plaintiff and other similarly situated employees did not require any specialized training or advanced knowledge.

43.     Plaintiff and others similarly situated did not provide medical advice or diagnoses.

44.     Plaintiff and other similarly situated employees did not perform any analysis.

45.     Plaintiff and others similarly situated did not interpret any information.

46.     Plaintiff and other caregivers made no medical recommendations.

47.     Plaintiff and others similarly situated did not write reports.

48.     Plaintiff and other caregivers satisfied the requirements of their job and adequately performed their duties to benefit Defendant, as well as the Defendant's clients.

49.     Plaintiff and other members of direct care and support staff performed their duties to the extent required by Defendant.

50.     The aforementioned duties were performed on Defendant's premises.  Defendant's clients did not reside in private residences; rather, they lived in Defendant's assisted living facilities.

51.     Defendant either owned or rented the units in which each of its clients resided. Defendant maintained complete control over these units.

52.     Plaintiff and others similarly situated were each assigned a client by Defendant. For the duration of his employment, Plaintiff was directed to provide care for the same client.

53.     Plaintiff's client was housed in one of Defendant's assisted living facilities.  At all times relevant, Plaintiff was instructed to perform his tasks at this facility.

54.     Plaintiff completed his tasks at Gwynn Oak Apartments. For the duration of the relevant period, Defendant's client was housed at this apartment complex.

55.     Defendant was responsible for all communications with the leasing agent, and specifically for all repairs and maintenance which might be necessary at the apartment.

56.     Defendant maintained complete control over the residence.

57.     Defendant was responsible for paying the client's bills.  Plaintiff can recall seeing bills in the Defendant's name that were attributable to the unit in which the client was housed.

58.     Many of Defendant's other clients lived in these apartments.  Defendant maintained multiple units within the division.  Defendant leased the unit in which each of these clients resided.[2]

---

[2] Many of Defendant's other clients lived in other apartment complexes.  Defendant maintained control over these apartments as well.

59.     For the entirety of his employment, Plaintiff worked as an hourly employee for Defendant.  Plaintiff received bi-weekly payments reflecting a pay rate of approximately eleven dollars ($11.00) per hour.   Plaintiff never received a raise.

60.     When his employment began, Plaintiff was responsible for working weekend shifts. These shifts lasted from 7:00 AM on Saturday to 7:00 AM on Monday. For the duration of this forty-eight (48) hour period, Plaintiff was required to actively care for his client.

61.     In June of 2014, Plaintiff took on additional shifts. Plaintiff began to work from 3:00 PM to 10:00 PM Monday through Friday.

62.     Once Plaintiff started working these additional shifts, they became a consistent part of his regular schedule.

63.     Understaffing required that Plaintiff work the additional shifts. For the majority of Plaintiff's employment, there was a high turnover rate.  Due to the long hours and low pay, it was common for Defendant's caregivers to terminate their employment after short periods.

64.     Although understaffing was a persistent problem, Defendant had to ensure that all of its shifts were covered each day.  As explained previously, Defendant's clients were in need of constant supervision.  Therefore, the tasks assigned to Plaintiff and other caregivers were based on the specific shift they were scheduled to work.  There were particular tasks designated to the morning, afternoon, evening and weekend shifts.

65.     For instance, Plaintiff and other caregivers responsible for the afternoon and weekend shifts would assist clients with their daily activities.  This entailed transporting clients to medical appointments and therapy groups, in addition to partaking in leisure activities. Accompanying clients to the movies, sporting events and other activities was a regular requirement throughout Plaintiff and other caregivers' employment.

66.     Once the activities were completed, Plaintiff and other caregivers would return their clients to their homes.  This would usually occur early in the evening.

67.     While at the residence, it was Plaintiff and other caregivers' duty to ensure that the client was properly maintaining the facility.

68.     Plaintiff and others similarly situated would oversee and assist Defendant's clients in their household activities.  This was for purposes of ensuring the client's safety.

69.     During this part of their shift, Plaintiff and others similarly situated would also perform many of the duties listed above, including cooking and cleaning.

70.     Toward the end of the evening, Plaintiff and others similarly situated would assist their clients with getting ready for bed.  Plaintiff and others would help their clients with bathing or other aspects of grooming when needed.

71.     Many of Defendant's caregivers were scheduled to work later shifts.  These caregivers were required to report to work after other employees' shifts had ended.  Their purpose was to relieve caregivers that were scheduled to work earlier.

72.     When scheduled to work weekend shifts, Plaintiff and other caregivers were responsible for the tasks that were handled by the later shift caregivers during the week.

73.     When working overnight shifts, Plaintiff and other caregivers closely monitored clients as they prepared for bed.  This was to ensure that clients were implementing techniques to advance their personal hygiene.

74.     Once a client had gone to bed, Plaintiff and other caregivers were required to monitor their clients' sleep patterns.  These observations were aligned with a client's treatment plan.

75.     Plaintiff and other caregivers were required to stay up through the night. Their duties centered on attending to any late night needs of their clients.

76.     The disabilities suffered by the clients required that they be monitored at all times. Their specific situations required the implementation of twenty-four (24) hour assistance. These circumstances demanded that Plaintiff and other caregivers always remain alert.

77.     Defendant's agents frequently performed night-time inspections. This was to ensure that Plaintiff and other caregivers were alert.

78.     Since Defendant owned or leased the facilities in which its clients were housed, the facilities were always accessible. This enabled Defendant's agents to enter the facilities at random and inspect Plaintiff and other caregivers' performance.

79.     Due to the multiple shifts worked by Plaintiff and others similarly situated, they consistently worked well over forty (40) hours in a workweek. During many pay-periods, Plaintiff and other caregivers regularly worked as many as sixty (60) to eighty (80) hours per week. There were periods when they were required to work even more

80.     Although Plaintiff and others similarly situated consistently worked well over forty (40) hours each week, they were not properly compensated for working these overtime hours.

81.     It was Defendant's company policy to not pay overtime. This was made clear to Plaintiff and other caregivers at the commencement of their employment.

82.     For the entirety of the relevant period, Plaintiff and other caregivers received the same hourly rate for all hours worked. Defendant refused to pay Plaintiff and others similarly situated any overtime wages. [3]

---

[3] Beginning in July of 2014, Defendant also made use of another company known as BBSI. This company was used to pay a portion of Plaintiff's wages. This was done for the sole purpose of circumventing wage laws. At all times relevant, Plaintiff was under the control of Defendant's agents, rather than the agents of BBSI. Plaintiff had no relations with any employee of BBSI.

83.     Consequently, Plaintiff and others were not compensated at a rate of "time and a half."  This occurred for the duration of their employment.

84.     There is no bona fide dispute that Plaintiff and other similarly situated employees are owed overtime wages for all hours worked over forty (40) in a workweek.

85.     The duties performed by Plaintiff and others similarly situated did not implicate any exemptions contained within the FLSA, MWHL, or the MWPCL.

86.     As caregivers, Plaintiff and other similarly situated employees' responsibilities did not require an advanced degree or specialized intellectual instructions.

87.     Plaintiff and others similarly situated retained no discretion in performing any of their assigned tasks.

88.     The fact that Plaintiff and others similarly situated all worked as hourly employees eliminates any excuse for them not to have been paid overtime wages.

89.     Defendant was well aware of the overtime hours that Plaintiff and other caregivers consistently worked.  In order to track their time, Defendant required that Plaintiff and others fill out bi-weekly timesheets.

90.     Plaintiff and others similarly situated submitted their timesheets regularly throughout their employment.  The timesheets clearly documented the hours that Plaintiff and other caregivers worked each week.

91.     Defendant knew that Plaintiff and other caregivers customarily worked over forty (40) hours per week.

92.     Defendant suffered and/or permitted Plaintiff and other similarly situated employees to work these overtime hours.

93.     Defendant, acting without good faith, withheld these overtime wages, even after Plaintiff and others similarly situated inquired about the wages missing from their pay-checks.

94.     Throughout his employment, Plaintiff made consistent inquiries regarding his failure to receive overtime wages.

95.     It was Defendant's routine practice to simply ignore Plaintiff's inquiries.

96.     Consequently, on behalf of himself and all those similarly situated, Plaintiff seeks the wages to which he is entitled and other available relief through this Complaint.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

97.     Plaintiff and other similarly situated employees work or worked as caregivers for Defendant.  They were employed by Defendant as either support or direct care staff.

98.     The FLSA requires employers to compensate non-exempt employees such as Plaintiff and others similarly situated overtime wages for all hours worked over forty (40) within a workweek.

99.     Defendant knew that Plaintiff and similarly situated employees typically worked over forty (40) hours per week.

100.    Defendant suffered or permitted Plaintiff and other caregivers to work more than forty (40) hours per week.

101.    Defendant knew or should have known that Plaintiff and those similarly situated were entitled to overtime pay for all hours worked over forty (40) in a workweek.

102.    Pursuant to the FLSA, Plaintiff commences this collective action against Defendant on behalf of himself and those similarly situated.

103.    Plaintiff demands damages reflecting an overtime rate of not less than one and a half (1.5) times his regular rate of pay for all hours worked over forty (40) in any workweek within

the applicable statute of limitations. Plaintiff makes these same demands on behalf of all members of the putative class.

104.    Plaintiff consents to be party plaintiff in this matter. Plaintiff's consent form is attached to this Complaint as Exhibit A.

105.    It is likely that other individuals will join Plaintiff during the litigation of this matter and file written consents to "opt in" to this collective action.

106.    There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

107.    These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

108.    Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

109.    Upon information and belief, others will choose to join Plaintiff in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

110.    Plaintiff brings this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure.

111.    Plaintiff brings this action on behalf of himself and other current and former employees that served as caregivers for Defendant and were subject to the following practices and policies:

112.    Denial of overtime wages under MWHL for all hours worked over forty (40) in a single workweek; and

113.     Denial of all wages owed to Plaintiff and other similarly situated employees at the termination of their employment, in violation of the MWPCL.

114.     The classes Plaintiff seeks to represent are defined as:

a.     *MWHL Class*: All individuals who are or were employed by Defendant as caregivers for any period ranging from three (3) years prior to the filing of the instant Complaint to the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek.

b.     *MWPCL Class*: All individuals who were, but are no longer, employed by Defendant as caregivers for any period ranging from three (3) years from when the instant Complaint was filed to the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek and thus, did not receive all wages owed to them before the termination of their employment.

115.     *Numerosity*: The individuals in the class are so numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, the class includes dozens of current and former employees who are readily identifiable through Defendant's pay records.  These employees were staffed at the housing units Defendant maintained on behalf of its clients.

116.     *Commonality*: There are questions of law and fact common to the classes.  Among the common questions of law and fact applicable to Plaintiff and the classes are:

a.     Whether the MWHL class is similarly situated because they were subject to Defendant's common policy and practice of not paying overtime ("time-and-a-half") pay to its employees.

b. Whether Defendant employed the MWHL class within the meaning of MWHL;

c. Whether Defendant violated MWHL by failing to pay Plaintiff and the MWHL class overtime compensation for hours worked in excess of forty (40) hours per workweek;

d. Whether Defendant's violations were willful;

e. Whether Defendant employed the MWPCL class within the meaning of the MWPCL;

f. Whether Defendant failed to provide Plaintiff and other members of the MWPCL class with all wages due at the time their employment ended; and

g. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

117. *Typicality*: Plaintiff's claims are typical of those of the classes. Each and every class member of both the MWHL class and the MWPCL class work or worked as a caregiver at one of the housing units maintained by Defendant. Understaffing and high turnover rates required each and every MWHL class member to work substantially over forty (40) hours each week. It was Defendant's common policy not to compensate its employees for working these overtime hours. Defendant's unlawful practices were well documented. Defendant also failed to pay Plaintiff and other members of the MWPCL class all wages owed to them at the conclusion of their employment. This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

118.    *Adequacy*: Plaintiff will fully and adequately protect the interests of the classes.  He seeks the same recovery as the classes, predicated upon the same violations of the law and the same damage theory.  Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions.  Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the classes.

119.    *Predominance*: The common issues of law and fact predominate over any individual issues.  Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one (1) set of facts.  This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's employment as required by the MWPCL.  Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid.

120.    This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes.  This would establish incompatible standards of conduct for Defendant.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources.  Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Count I - Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiff and all Members of the Collective Class Who, During The Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become a Party Plaintiff.*

121.    Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

122. Plaintiff is entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

123. As described above, Plaintiff has not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a workweek; Defendant failed to compensate Plaintiff for these additional hours.

124. Defendant willfully and intentionally failed to compensate Plaintiff for the overtime wages he is owed.

125. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

126. Under the FLSA, Plaintiff is entitled to additional wages from Defendant to compensate him for the hours he worked in excess of forty (40) in a workweek at a rate of one and one-half (1.5) times his regular hourly wage rate.

### *Count II.  Violation of MWHL: Failure to Pay Overtime Wages to Plaintiff and all those that are Joined as Party Plaintiffs in this Matter by Motion or by Any Other Means Deemed Appropriate by This Honorable Court*

127. Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

128. Pursuant to Md. Code Ann., Lab. & Empl. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate.

129. Pursuant to Md. Code Ann., Lab. & Empl. § 3-420(a), an employer shall compute the wage for overtime under Md. Code Ann., Lab. & Empl. § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

130.     Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

131.     Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages he is owed.

132.     There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

133.     Under MWHL, Plaintiff is entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times his regular hourly wage rate.

***Count III - Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiff and all those that are Joined as Party Plaintiff in this Matter by Motion or by Any Other Means Deemed Appropriate by This Honorable Court.***

134.     Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

135.     Plaintiff is entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et. seq.*, which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

136.     Plaintiff has not received compensation from Defendant for all wages owed for work performed before the termination of his employment as required by Md. Code Ann., Lab. & Empl. §3-505(a).  This is specific to Defendant's failure to pay Plaintiff the overtime wages to which he is entitled.

137.     Defendant willfully and intentionally did not compensate Plaintiff for the wages owed to him and continued to violate the MWPCL, even after Plaintiff informed Defendant of the violation.

138.    Under the MWPCL, there is no bona fide dispute that Plaintiff is owed wages for work performed while employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and others similarly situated, prays for the following relief:

a)    In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiff and those similarly situated;

b)    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and emails of all those individuals who are similarly situated and permitting Plaintiff to send notice of this action to all those similarly situated individuals;

c)    Designating the named Plaintiff to act as class representatives on behalf of all similarly situated employees for the FLSA collective class;

d)    Judgment against Defendant for its failure to pay Plaintiff, and those similarly situated, in accordance with the standards set forth by the FLSA;

e)    Judgment against Defendant for its failure to pay Plaintiff, and those appropriately joined to this matter, in accordance with the standards set forth by MWHL;

f)    Judgment against Defendant for its failure to pay Plaintiff, and those appropriately joined to this matter, in accordance with the standards set forth by the MWPCL;

g)    Judgment against Defendant and classifying its conduct as willful and not in good faith;

h)    Judgment against Defendant and classifying Plaintiff, the collective class, and those appropriately joined in this matter as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

i)    An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff and those similarly situated, calculated at a rate that is not less than one and a half (1.5) times Plaintiff and other similarly situated employees' regular hourly rate for all overtime hours worked;

j)    An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiff and those similarly situated, whichever is deemed just and equitable by this Honorable Court;

k)    An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

l)    Leave to add additional Plaintiff to all claims by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

m)    All further relief deemed just and equitable by this Honorable Court.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that a jury of his peers hear and decide all possible claims brought on behalf of Plaintiff and those similarly situated.

Respectfully submitted,

*/s/ Robert J. Leonard*
Robert J. Leonard, Esq. (07183)
rleonard@nicholllaw.com
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiff*