IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEVIN JONES,

 Plaintiff,

  v.

FIDELITY RESOURCES, INC.,

 Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Civil Action No. RDB-17-1447

## **MEMORANDUM OPINION**

Plaintiff Devin Jones ("Plaintiff" or "Jones"), on behalf of himself and other similarly situated employees, brings this action against his former employer Defendant Fidelity Resources, Inc. ("Defendant" or "Fidelity") alleging failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.,* and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., § 3-501, *et seq.* ("MWPCL"). (Compl., ECF No. 1.) Currently pending before this Court is Plaintiff's Motion for Conditional Certification to Facilitate Identification and Notification of Similarly Situated Employees under the Fair Labor Standards Act (ECF No. 5) and Plaintiff's Motion for Leave to File Supplemental Memorandum (ECF No. 20). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Plaintiff's Motion for Conditional Certification to Facilitate Identification and Notification of Similarly Situated Employees (ECF No. 5) is GRANTED

in PART and DENIED in PART. Specifically, a collective action is conditionally certified for a class consisting of "all hourly employees who worked for Fidelity Resources, Inc. in the ISS and/or PSS programs from May 2014 to February 1, 2018." Plaintiff's Motion for Leave to File Supplemental Memorandum (ECF No. 20) is DENIED, as it attaches the Declaration of another former employee of the Defendant who ultimately settled any claims with the Defendant and therefore cannot participate in this cause of action.

## BACKGROUND

Devin Jones began working for Defendant Fidelity on November 1, 2012. (Jones Decl., ECF No. 5-3 at ¶ 6.) Fidelity is a Maryland non-profit corporation that provides healthcare services to individuals who suffer from various physical and cognitive disabilities, mental illnesses, or other conditions. (*Id.* at ¶ 4.) Fidelity provides these services through four programs:

a. Individual Family Care (or "IFC") program, which provides adult foster care services;
b. Family Support Services (or "FSS") program, which provides in-home services to children under twenty (20) years old;
c. Individual Support Services ("ISS") program, which provides independent adult living services; and
d. Personal Support Services ("PSS") program, which provides independent adult living services.

(Oparah Aff., ECF No. 13-1 at ¶ 2.) Clients in the ISS and PSS programs require 24-hour services while clients in the IFC and FSS programs do not. (*Id.* at ¶¶ 7-8). Fidelity also leases single-unit apartments for the clients requiring 24-hour services. (*Id.* at ¶ 8.)

Fidelity hired Jones as a "caregiver," also known as a home health specialist. (ECF No. 5-3 at ¶¶ 4, 7.) He was a part-time employee, earning eleven dollars per hour. (*Id.* at ¶¶ 5-6.) Jones testified that as a caregiver, he and the other approximately fifty caregivers

2

employed by Fidelity performed both direct care and support care, primarily entailing monitoring the physical and mental conditions of Fidelity's clients. (*Id.* at ¶ 7.) This care involved helping the clients bathe, dress, and groom, providing domestic services, running errands with the clients, and attending clients' medical appointments. (*Id.* at ¶ 8.) Accordingly, the clients required constant care, leading to morning, afternoon, evening and weekend shifts. (*Id.* at ¶ 15.) For the weekend shifts, Jones and other caregivers were required to monitor the clients' sleeping patterns. (*Id.* at ¶ 17.) Therefore, the caregivers had to remain awake through the night. (*Id.*) Jones claims that he, along with other similarly situated caregivers who also received the same hourly rate, consistently worked more than forty (40) hours per week. (*Id.* at ¶¶ 5-6.) Further, a majority of the caregivers worked as many as sixty to eighty hours per week. (*Id.* at ¶ 28.) Jones asserts that the excessive hours were primarily due to understaffing, and that Fidelity was aware that Jones and other caregivers were working excessive hours because Defendant created their schedules and also required bi-weekly timesheets from their employees. (*Id.* at ¶¶ 20-21.) Despite working over forty hours per week, the employees were never paid time and a half.

Specific to Jones, he worked for a single client in the ISS program who lived in one of the apartments leased by Defendant. (*Id.* at ¶ 13; Oparah Aff., ECF No. 13-1 at ¶¶ 13-14.) He initially only worked weekend shifts, which were forty-eight hour shifts from 7:00 a.m. Saturday though 7:00 a.m. Monday. (*Id.* at ¶ 16.) In June of 2014, he also took on day shifts. (*Id.* at ¶ 18) From this time through his employment ending on October 1, 2016, he worked from 3:00 p.m. to 10:00 p.m. Monday through Friday, and then worked a weekend shift. (*Id.*)

On May 25, 2017, Plaintiff filed a complaint against Fidelity, alleging that it failed to

pay its employees overtime wages. (ECF No. 1.) On July 28, 2017, Plaintiff filed his Motion for Conditional Certification requesting that his case proceed as a collective action. (ECF No. 5.) To support his Motion, Plaintiff attached his own declaration, asserting that Fidelity illegally refused to pay its employees time and a half for hours worked in excess of forty hours each week, and in fact, it "was made clear to other caregivers and [Jones] at the commencement of [their] employment" that Defendant's company policy was not to pay overtime. (*Id.* at ¶¶ 22-23.) Plaintiff also attached a complaint filed by a former Fidelity employee, Craig Clinton, who initiated a wage lawsuit against Fidelity in 2015. Defendant filed a Response on September 1, 2017, and Plaintiff filed a Reply on September 29, 2017. (ECF Nos. 13, 19.) Subsequently, on October 3, 2017, Plaintiff filed a Motion for Leave to File Supplemental Memorandum in Support of Plaintiff's Response, seeking to add a declaration by Clinton, which Defendant opposes. (ECF Nos. 20, 21.)

## STANDARD OF REVIEW

Under the Fair Labor Standards Act, a plaintiff may bring an action on behalf of himself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b); *see also Quinteros v. Sparkle Cleaning, Inc.,* 532 F. Supp. 2d 762, 771 (D. Md. 2008). As this Court previously noted, Section 216 of the FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros,* 532 F. Supp. 2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000)). Section 216(b) provides, in relevant part, that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and

on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Whether to grant conditional certification is left to the court's discretion. *Syrja v. Westat, Inc.,* 756 F. Supp. 2d 682, 686 (D. Md. 2010) (stating that "[d]eterminations of the appropriateness of conditional collective action certification . . . are left to the court's discretion[]"); *see also Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). This Court employs a two-step inquiry when deciding whether to certify a collective action under the FLSA. *Syrja,* 756 F. Supp. 2d at 686; *Banks v. Wet Dog Inc.*, No. CIV.A. RDB-13-2294, 2015 WL 433631, at *1 (D. Md. Feb. 2, 2015). First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216. *Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The court then renders a final decision regarding the propriety of proceeding as a collective action. *Id.* The second, more "stringent" phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and thus is referred to as the "decertification stage." *Syrja,* 756 F. Supp. 2d at 686.

## ANALYSIS

I. **Motion to File Supplemental Memorandum**

Plaintiff's Motion for Leave to File Supplemental Memorandum in Support of

Plaintiff's Response asserts that despite exercising due diligence, he did not receive the declaration of Craig Clinton until October 2, 2017. (ECF No. 20.) Defendant asserts that the Motion must be denied for several reasons. First, the information in the additional declaration was known before Plaintiff filed his Response. Defendant asserts that this is evident from the fact that Plaintiff attached Clinton's complaint to his initial Motion, the declaration is signed September 29, 2017, and Plaintiff's counsel is the same counsel that represented Clinton in the prior proceeding. Second, Defendant also argues that it will be prejudiced if the Supplemental Memorandum is accepted because Clinton cannot be an "opt-in" member to this action given that his prior lawsuit was settled and therefore dismissed. *Clinton v. Fidelity Resources, Inc.*, 1:15-cv-03854-ELH, ECF No. 24.

As explained below, this Court finds that Plaintiff has made the requisite modest showing that the class would be similarly situated without considering Clinton's declaration. Accordingly, nothing in the supplement alters this Court's opinion. Further, as Defendant correctly notes, Clinton's FLSA claims against Fidelity were dismissed with prejudice, and accordingly he could not be a part of the class. For these reasons, Plaintiff's Motion to File Supplemental Memorandum (ECF No. 20) is DENIED.

II. **Motion for Conditional Certification**

A. **Plaintiffs are similarly situated**

The "paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Williams v. Long,* 585 F. Supp. 2d 679, 684 (D. Md. 2008). Plaintiffs bear the burden of showing that their claims are "similarly situated," but courts have ruled that

"similarly situated" need not mean "identical." *See, e.g.*, *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001). This Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law. *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 566 (D. Md. 2012) (citing *Mancia v. Mayflower Textile Servs. Co.,* CIV.A. No. CCB–08–273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008)).

A plaintiff's allegations thus "must consist of more than 'vague allegations' with 'meager factual support,' but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Mancia*, 2008 WL 4735344, at *2 (quoting *D'Anna v. M/A–COM, Inc.,* 903 F. Supp. 889, 893 (D. Md. 1995)). Plaintiffs may rely on "affidavits or other means" to make the required showing. *Williams,* 585 F. Supp. 2d at 683; *see also Bouthner v. Cleveland Const., Inc.*, CIV.A. No. RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012); *Ruiz v. Monterey of Lusby, Inc.*, CIV.A. No. DKC 13-3792, 2014 WL 1793786, at *1–2 (D. Md. May 5, 2014). If, however, "sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright." *Syrja,* 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Sch.,* 629 F. Supp. 2d 544, 547 (E.D.Va. 2009)).

Plaintiff asserts that he and members of the putative class are similarly situated for three reasons. First, they performed similar duties relating to the everyday care of Fidelity's clients. Second, they frequently worked weekend shifts on top of their additional shifts throughout the week, amounting to over forty hours a week. Third, they were subject to the same company-wide policy to pay all caregivers an hourly rate of between ten and fifteen

7

dollars, and not paid time and a half for hours worked over forty.

Defendant argues that Jones cannot obtain conditional certification because his declaration alone does not factually support that there are similarly situated employees, and he never identifies "other caregivers" by name. (ECF No. 13.) Beginning with Defendant's first argument, this Court has found that a plaintiff made the "modest factual showing" that he was part of a common policy or plan of not paying overtime based only on the named plaintiff's own affidavits. *Mercado v. North Star Foundations, Inc.*, No. WMN-10-3467, 2011 WL 1557887, at *2-3 (D. Md. Apr. 21, 2011).[1] As in *Mercado*, Jones asserts that due to understaffing and the nature of the clients' needs, Fidelity required that he and other caregivers work more than forty hours per week without receiving overtime wages. Second, as this Court explained in *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 572 (D. Md. 2012), "this district has previously refused to impose a requirement that plaintiffs identify other potential opt-in plaintiffs when moving for conditional certification." (citing *Mancia v. Mayflower Textile Servs. Co.*, No. CIV.A. CCB-08-273, 2008 WL 4735344, at *3 n. 5 (D. Md. Oct. 14, 2008); *Quinteros v. Sparkle Cleaning, Inc.,* 532 F.Supp.2d 762, 772 (D. Md. 2008)).[2]

Jones testified that he and others similarly situated employees consistently worked well over forty hours per week. In fact, he asserts that he and other caregivers regularly

---

[1] This Court also distinguished the facts of *Mercado* from two cases in which Defendant relies on here: *D'Anna v. M/A-Com, Inc.*, 903 F.supp. 889 (D. Md. 1995); *Syrja v. Westat, Inc.*, 756 F.Supp. 2d 682 (D. Md. 2010). As in *Mercado*, the facts of this case can be distinguished from *D'Anna* and *Syrja* where the plaintiffs failed to allege a uniform policy of refusing to pay overtime.

[2] Fidelity also argues that the Complaint and Declaration fail to identify potential class members' dates of employment, locations they worked, and programs they worked in. (ECF No. 13 at 10.) Fidelity asserts that the latter is "particularly relevant to conditional certification" because caregivers for clients in the IFC and FSS programs did not require 24-hour services, and accordingly those caregivers worked fewer shifts per day and different shift lengths. As explained below, this Court considers this argument with respect to the *scope* of the collective action.

8

worked as many as sixty to eighty hours per week. This was due to understaffing and the high demands of Fidelity's clients which required 24-hour services, much of which occurred at the client's residences that Fidelity leased for them. Despite working over forty hours per week, however, they were never paid time and a half. Jones asserts that this is because it was the Defendant's company policy not to pay overtime, which was made clear at the commencement of employment. Accordingly, Plaintiff has made the requisite showing that he and other caregivers were similarly situated and that there is a company-wide policy by Fidelity regarding their overtime pay.

  **B. Scope of proposed action**

Alternatively, Fidelity contends that if conditional certification is granted, the proposed class should be limited to only staff in the ISS and PSS programs. As stated above, unlike clients in the IFC and FSS programs, clients in the ISS and PSS programs require 24-hour services. Plaintiff, in arguing that conditional certification should be granted, emphasized that the class would be similarly situated because of the scope of their work and hours worked. Specifically, the clients for whom services were provided required constant care, including "around-the-clock" supervision, and the caregivers performed "a substantial portion of the work" at the clients' assigned residences. (ECF No. 5-1 at 10-11.) As a result of the services required, the caregivers' shifts were substantial in length, leading to working over forty hours per week. By his own argument, then, Plaintiff is not describing employees in all four programs. Rather, he is only describing employees in the ISS and PSS programs, which require 24-hour services and live in residences leased by Fidelity. Accordingly, this Court will limit the scope of the class to only employees working in the ISS and PSS

programs.

### C. Definition of the class

For the reasons stated above, Plaintiff's Motion will be granted in part and this Court will conditionally certify a collective action consisting of all hourly employees who worked for Fidelity Resources, Inc. in the ISS and/or PSS programs from May 2014 to February 1, 2018.

### D. Notice form

Pursuant to the FLSA, a Notice of Collective Action "must provide accurate and timely notice to potential plaintiffs so they may make informed decisions about whether to join a collective action." *Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016). However, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Id.* (citing *Mcfeeley v. Jackson St. Entm't, LLC*, DKC 12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 487, 107 L. Ed. 2d 480 (1989). Because Plaintiff has met his preliminary burden to show that there are other similarly situated employees, notice will be provided to all hourly employees who worked for Fidelity Resources, Inc. in the ISS and/or PSS programs from May 2014 to February 1, 2018. As described in this Court's order, the parties are directed to confer with one another within seven days and submit a Joint Proposed Notice of Collective Action. Further, within fifteen days, Fidelity is directed to provide Plaintiff with the names and last known home and email addresses of all collective action members. *See Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016) ("This court has recognized that e-

mail communication is 'now the norm' and in numerous cases has directed FLSA defendants to produce such information." (quoting *Calder v. GGC-Baltimore, LLC*, No. BPG-12-2350, 2013 WL 3441178, at *3 (D. Md. July 8, 2013)); *Mendoza v. Mo's Fisherman Exchange, Inc.*, No. X, 2016 WL 3440007, at *20 (D. Md. June 22, 2016) (only requiring the defendants to provide email addresses because "'communication through email is [now] the norm'" (quoting *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012)).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Conditional Certification to Facilitate Identification and Notification of Similarly Situated Employees (ECF No. 5) is GRANTED in PART and DENIED in PART. Specifically, a collective action is conditionally certified to a class consisting of "all hourly employees who worked for Fidelity Resources, Inc. in the ISS and/or PSS programs from May 2014 to February 1, 2018." Plaintiff's Motion for Leave to File Supplemental Memorandum (ECF No. 20) is DENIED.

Dated: February 1, 2018

_____/s/_____
Richard D. Bennett
United States District Judge