# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DEVIN JONES, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-17-1447 |
| FIDELITY RESOURCES, INC., | * | |
| Defendant. | * | |
|  | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiffs Devin Jones ("Plaintiff" or "Jones") and other similarly situated employees bring this action against their former employer, Defendant Fidelity Resources, Inc. ("Defendant" or "Fidelity"), alleging failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.,* and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., § 3-501, *et seq.* ("MWPCL"). (Compl., ECF No. 1.)

On February 1, 2018, this Court issued a Memorandum Opinion and accompanying Order (ECF No. 4, 5) which permitted Plaintiff to proceed with an FLSA collective action, *see* 29 U.S.C. § 216(b), conditionally certified a class consisting of "all hourly employees who worked for Fidelity Resources, Inc. in the ISS and/or PSS programs from May 2014 to February 1, 2018," and permitted notice of this action to be provided to the class members. As a result, numerous plaintiffs have submitted opt-in forms indicating their consent to join

the collective action.[1]

Now pending before this Court are: Plaintiffs' Motion for Class Certification (ECF No. 72); Defendant's Motion to Strike Untimely Opt-in Plaintiffs (ECF No. 75); Defendant's Motion to Dismiss Counts II and III of Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 76); and Plaintiffs' Motion for Summary Judgment (ECF No. 77). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Plaintiffs' Motion for Class Certification (ECF No. 72) is GRANTED; Defendant's Motion to Strike Untimely Opt-in Plaintiffs (ECF No. 75) is DENIED; Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 76) is DENIED; and Plaintiffs' Motion for Summary Judgment (ECF No. 77) is GRANTED IN PART AND DENIED IN PART. Specifically, Plaintiffs are entitled to Summary Judgment on Defendant's affirmative defense as to the companionship services exemption, but not entitled to a finding of liquidated damages at this time.

## BACKGROUND

Jones alleges that his former employer, Fidelity, unlawfully withheld overtime payments from him and other employees for their round-the-clock work caring for Fidelity clients suffering from physical and cognitive disabilities. (Compl. 2, ECF No. 1.) Fidelity, a non-

---

[1] The opt-in plaintiffs are as follows: Victoria Queen ("Queen"), Kaprice Jefferies ("Jefferies"), Yolanda Wiggins ("Wiggins"), Gloria Walabai ("Walabai"), Kehinde Ogbonna ("Ogbonna"), Shavon Moore ("Moore"), Torey Hopkins ("Hopkins"), Tammaka Gee ("Gee"), Yvette Ellis ("Ellis"), Latoya Kane ("Kane"), Jeannine Moody-White ("Moody-White"), Christy Hill ("Hill"), Gloria Buck ("Buck"), Shanel Lightner ("Lightner"), Shamira Brown ("Brown"), Tannea Steele ("Steele"), Kamonte McCargo ("McCargo"), Terri Jones ("Jones"), Marquette Payne ("Payne"), Shanna McCollough ("McCollough"), Montaz Young ("Young"), Latifa Crosland ("Crosland"), Terry Pitman ("Pittman"), and Jalisa Jones ("Jones").

profit Maryland corporation, contracts with the Maryland Developmental Disabilities Administration ("MDDA") to provide services to individuals with disabilities. (Oparah Aff. ¶¶ 2-3, ECF No. 13-1.) Fidelity provides services through four programs:

a. Individual Family Care (or "IFC") program, which provides adult foster care services;
b. Family Support Services (or "FSS") program, which provides in-home services to children under twenty (20) years old;
c. Individual Support Services ("ISS") program, which provides independent adult living services; and
d. Personal Support Services ("PSS") program, which provides independent adult living services.

(*Id.* at ¶ 2.) Clients in the ISS and PSS programs require 24-hour services while clients in the IFC and FSS programs do not. (*Id.*)

The clients live in single-unit apartments leased and maintained by Fidelity. (*Id.* at ¶ 8; Joint Stipulation of Undisputed Facts at ¶ 2, ECF No. 72-5.) Clients reside in these apartments for the specific purpose of receiving care from Fidelity. (Pls.'s Ex. 2, Oparah Dep. 18:3-21, ECF No. 77-4.) Once Fidelity's services end (*e.g.*, should the client wish to discontinue care), they are not permitted to remain in the apartments. (*Id.* at 27:3-13.) Fidelity exerts complete control over its apartment units: it manages them (*Id.* at 14:20-15:3; 20:16-20), cleans them (*Id.* at 15:7-18), furnishes them (*Id.* at 18:20-21), and pays the rent and other associated bills. (*Id.* at 18:8-15.) In some instances, clients contribute to or pay the utilities and rent for the leased apartments. (Def.'s Ex. A, Oparah Aff. ¶ 4, ECF No. 86-1.)

Fidelity directly employs staff persons, known as "caregivers" or "home health specialists" to assist their clients. (Oparah Aff. at ¶ 8; McCullough Decl. at ¶¶ 4, 7, ECF No. 72-7; Wiggins Decl. at ¶¶ 4-5, ECF No. 72-8; Walabai Decl. at ¶¶ 4-5, ECF No. 72-9; Gee Decl. at ¶¶ 5-6, ECF No. 72-10.) Caregivers are compensated based on an hourly rate ranging

from $9.00 to $11.00 per hour. (Oparah Dep. 43:11-19, 64:6-65:2; McCullough Decl. at ¶ 6; Wiggins Decl. at ¶ 7; Walabai Decl. at ¶ 7; Gee Decl. at ¶ 4.) They are paid directly by Fidelity, which contracts with third-party providers for payroll services. (Pls.'s Exhibit 1, Def.'s Answers to Interrogs. No. 17, ECF No. 77-3.) Fidelity exerts a great deal of control over the caregivers' employment. Caregivers are assigned to work for specific clients. (Oparah Dep. 25:16-26:1.) Christiana Oparah, Fidelity's CEO and corporate designee, testified that caregivers are assigned specific duties to perform for their assigned clients and are trained in how to perform those duties. (*Id.* at 36:18-37:5, 39:3-6.) Former employees aver that Fidelity dictated caregivers' schedules and required them to submit bi-weekly timesheets. (McCullough Decl. at ¶ 22; Wiggins Decl. at ¶ 20; Walabai Decl. at ¶ 20; Gee Decl. at ¶ 21.)

Plaintiffs allege that they were not paid at the overtime rate mandated by state and federal law despite working well over forty hours per week. Fidelity admits that Plaintiffs and other caregivers in its ISS and PSS departments regularly worked overtime, but represents that "nobody was forced" to work overtime. (Oparah Dep. 52:1-10; 52:19-53:5.) Current and former employees state that they often worked as many as sixty to eighty hours per week, often over one hundred hours over the course of two weeks. (McCullough Decl. at ¶ 20; Wiggins Decl. at ¶ 16, Walabai Decl. at ¶ 17.) The Declaration of one current employee, Gloria Walabai, indicates that she consistently worked over 150 to 180 hours every two weeks and that in one two-week period she logged approximately two-hundred fifty hours of work because she was the only employee assigned to care for a particular client. (Walabai Decl. at ¶ 17.) On weekends, caregivers in these departments were scheduled to work a 48-hour shift. (Def.'s Answers to Interrogs. No. 3; Oparah Aff. at ¶ 8.)

During her deposition, Oparah testified on behalf of Fidelity that the company only began paying its caregivers at the legally mandated overtime rate after a lawsuit was filed against it. In December 2015, a former Fidelity employee initiated a lawsuit accusing Fidelity of the same wage violations alleged in this lawsuit. Complaint, *Clinton v. Fidelity Resources, Inc.*, ELH-15-3854 (D. Md.), ECF No. 1. In September 2016, the parties settled the lawsuit and the case was dismissed. Order, *Clinton v. Fidelity Resources, Inc.*, ELH-15-3854 (D. Md.), ECF No. 24. In her deposition, Oparah testified that Fidelity has been "paying overtime since" that lawsuit was filed,[2] and that it was not "aware" of overtime laws beforehand. (Oparah Dep. 48:16-20; 50:2-8).

Since the Oparah deposition, Fidelity has supplemented the record to indicate that its payment of overtime wages followed on the heels of new legal developments. In 2013, the Department of Labor promulgated a final regulation, scheduled to become effective on January 1, 2015. The regulation narrowed the scope of the "companionship services" exemption to the FLSA's overtime requirements. 29 C.F.R. § 552.109; *see also Home Care Ass'n of America v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2506 (2016). Specifically, the regulation declares that "[t]hird party employers of employees engaged in companionship services . . . may not avail themselves of the minimum wage and overtime exemption provided by section [2]13(a)(15)." 29 C.F.R. § 552.109(a) (2015). The regulation also narrows the definition of "companionship services" to cover a broader swath of healthcare workers. On August 21, 2015, the District of Columbia Circuit Court of Appeals affirmed the new regulation. *Home Care Ass'n of America*, 799 F.3d at 1090. In a subsequently

---

[2]     The Record does not clearly indicate when Fidelity began making overtime payments.

executed affidavit, Oparah testified that Fidelity's payment of overtime wages resulted from the enactment of 29 C.F.R. § 552.109, rather than from the *Clinton* lawsuit. (Def.'s Ex. A, Oparah Aff. at ¶ 2, ECF No. 86-1.)

## STANDARD OF REVIEW

### I. Motion to Dismiss.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts. *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line

from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## II. Motion for Class Certification.

To obtain class certification, the Plaintiffs must meet all four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). These requirements are referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). With respect to Rule 23(b), Plaintiffs seek certification of the putative class under Rule 23(b)(3), which requires a finding that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The plaintiff must establish that the class certification requirements have been met by a preponderance of the evidence. *Brown v. Nucor Corp.*, 785 F.3d 895, 931-32 (4th Cir. 2015).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common issues of law or fact, etc." *Id.* at 351. In ruling on a class certification motion, a court must take a close look at the facts relevant to the certification question, even if those facts "tend to overlap with the merits of the underlying case." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *accord*

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("[W]hile an evaluation of the merits . . . is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits.").

The Supreme Court recently noted that "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558 (1963)).

## III.     Motion for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). When considering a motion for summary judgment, a judge's function is limited to determining

whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

I.    **This Court Will Not Strike the Untimely Opt-In Plaintiffs Identified by Defendant.**

On February 1, 2018, this Court conditionally certified this matter as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (ECF Nos. 24, 25.) On February 20, 2018, this Court established May 2, 2018 as the deadline by which potential class members were required to "opt-in" to the class. (ECF No. 31.) After this deadline elapsed, four plaintiffs filed notices of consent to join the class, as follows: Montaz Young (opted-in

on May 3, 2018), Latifa Crosland (May 4, 2018), Terry Pittman (August 2, 2018), and Jalisa Jones (August 14, 2018). Defendant moves this Court strike these Plaintiffs.

Courts consider the following five factors when analyzing whether to permit untimely opt-ins: "(1) whether 'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA." *Stevenson v. Great Am. Dream, Inc.*, TWT-12-3359, 2014 WL 4925597, at *2 (N.D. Ga. Sept. 30, 2014) (quoting *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009)). No single factor is dispositive. *Adams v. Nature's Expressions Landscaping, Inc.*, JMH-16-0098, 2017 WL 4844560, at *4 (E.D. Ky. Oct. 25, 2017) (citing *Lykins v. First Acceptance Corp.*, 3:13-cv-01374, 2015 WL 2367155, at *2 (M.D. Tenn. May 18, 2015)). Applying these factors, this Court has previously permitted a plaintiff to file an opt-in notice almost four months past the deadline. *Randolph v. PowerComm Const., Inc.*, 309 F.R.D. 349, 361 (D. Md. 2015).

A balancing of these factors counsels against striking the untimely opt-in plaintiffs. The untimely opt-ins in no way prejudice the Defendant. It is undisputed that Defendant has made almost no discovery requests despite two extensions of the discovery deadline, which was ultimately set for October 10, 2018. (ECF No. 60.) As a result, Defendant can hardly claim that a few late opt-ins during the discovery period prevented it from developing a defense against the new plaintiffs' claims. Striking these plaintiffs makes especially little sense considering just how narrowly Young and Crosland missed the cut-off date. Young was only a day late; Crosland only two days. Jones and Pittman filed much later, but their delay does not warrant exclusion from this case. Jones claims that she filed an untimely notice because

she was afraid that Fidelity would retaliate against her. (J. Jones Decl. ¶ 4, ECF No. 81-1.) Whether these fears were real or imagined, striking Jones merely because she delayed her opt-in for fear of losing her job would contravene the remedial purposes of the FLSA. Pittman presents a closer case. Although Defendant admitted that it failed to include her name on the list of potential class members used to notify the members of the collective class (ECF No. 58 at 1, n.1), it appears she signed and dated her opt-in form on April 5, 2018, nearly one month before the opt-in period closed. (ECF No. 55.) Nevertheless, excluding Pittman or any of the four Plaintiffs at issue here would only risk "spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future." *Randolph*, 309 F.R.D. at 362 (quoting *Ruggles*, 687 F. Supp. 2d at 38). This prospect would undermine the whole purpose of the collective action and render futile any attempts to maintain effective case management. Accordingly, Defendant's Motion to Strike Untimely Opt-In Plaintiffs (ECF No. 75) is DENIED.

## II. Plaintiffs May Simultaneously Pursue Claims Under the FLSA and Maryland State Law.

Fidelity seeks dismissal of Counts II and III of the Complaint. In Count I, Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"). In Counts II and III, Plaintiffs seek relief under the FLSA's state law analog, the Maryland Wage and Hour Law (the "MWHL") and Maryland Wage Payment and Collection Law (the "MWPCL"), which governs the timing of payments and disputes over entitlement to wages. Defendant argues that the state law claims asserted in Counts II and III must be dismissed because Plaintiffs cannot simultaneously maintain an FLSA claim while advancing claims under Maryland State wage and hour law. For this proposition, Defendant relies on an interpretation of an August 7, 1970

Opinion issued by Maryland's former Attorney General, Francis B. Burch (Def. Ex. 1, ECF No. 76-2) and cites inapplicable provisions of Maryland law.

## A. Defendant's Arguments are Foreclosed by Unanimous Federal Precedents.

Unanimous federal court authority forecloses Fidelity's position. Fidelity acknowledges that "various decisions of this Court hold that a plaintiff can simultaneously assert claims under both the FLSA and the MWHL for the same overtime violation." (Def.'s Mot. to Dismiss 3, ECF No. 76-1.) For example, in *Banks v. Wet Dog, Inc.*, RDB-13-2294, 2014 WL 4271153, at *5 (D. Md. 2014), this Court explicitly rejected the argument that the FLSA moots or preempts identical MWHL claims, noting that "[t]here is nothing in the [FLSA] that . . . prevents employees from maintaining FLSA claims and MWHL claims in the same suit." *Banks* adheres to the unanimous view of the federal courts that the FLSA does not preempt the MWHL. *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264 (3d Cir. 2012); *Iraheta v. Lam Yuen, LLC*, 2013 WL 6713219, at *8-9 (D. Md. Dec. 16, 2013); *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 672 (D. Md. 2011); *Hoffman v. First Student, Inc.*, AMD-06-1882, 2009 WL 1783536, at *9 (D. Md. Jun. 23, 2009).[3] Defendant's position also defies numerous Maryland state court opinions which, although not addressing Defendant's novel arguments, have permitted plaintiffs to bring claims under the FLSA and state law simultaneously. *See, e.g.*, *Campusano v. Lusitano Const. LLC*, 56 A.2d 303, 308 (2012); *Newell v. Runnels*, 967 A.2d 729, 771 (2009) On the force of these precedents alone, Defendant's arguments must be rejected.

---

[3] Defendant also argues, in the alternative, that the United States Court of Appeals for the Fourth Circuit's decision in *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 184 (4th Cir. 2007) stands for the proposition that the FLSA preempts the MWHL. This Court has previously rejected that argument, and discerns no reason to deviate from these precedents. *See, e.g.*, *Chavez v. Besie's Corp.*, GJH-14-1338, 2014 WL 5298032, at *4 (D. Md. Oct. 10, 2014); *Iraheta*, CBD-12-1426, 2013 WL 6713219, at *8-9 (D. Md. Dec. 16, 2013).

## B. The 1970 Opinion a Former Maryland Attorney General Does not Limit the Enforceability of the MWHL.

Despite acknowledging the force of this authority, Defendant relies on the 1970 Attorney General Opinion to argue that (1) either the FLSA or the MWHL—but not both—can apply in a given case; and (2) the MWHL only applies when it "provides benefits that are *higher* than those provided by the FLSA or another applicable law." (ECF No. 76-1, at 7.) To support these arguments, Defendant excerpts the Attorney General's statement that "in the case of an employee covered by both the federal and State law, that statute shall be applicable which operates most favorably to the employee" and a separate remark that some employees who are not covered by the FLSA are nevertheless entitled to the benefits of the MWHL if the Maryland law has "higher standards or provides additional benefits." 55 Op. Md. Att'y. Gen. 219, 221-22 (1970). Defendant argues that this interpretation warrants dismissal of Counts II and III because, in this case, the FLSA and MWHL yield equal—not greater—overtime benefits. As the MWHL cannot apply here, Defendant argues, Plaintiffs' claims under the MWPCL also cannot stand.

This unprecedented interpretation of the MWHL would upend years of jurisprudence and severely limit workers' ability to pursue their state rights. Defendant fails to supply adequate reason to abandon this Court's precedents in favor of its interpretation of an extra-judicial opinion issued fifty years ago. Moreover, Defendant overlooks the context in which the Attorney General made his comments. The Attorney General's Opinion addressed the applicability of state wage and hour laws to certain types of employment partially or wholly excluded from overtime pay under the FLSA, but covered under state law. *Id.* at 220. After observing that state and federal laws must "co-exist in harmony" and that both laws "evidence

an intent to give effect to the highest minimum wage and the lowest maximum work week to the broadest spectrum of employees," the Attorney General concluded that Maryland employees who are not fully covered by the FLSA may nevertheless claim the benefits of the more generous provisions of Maryland law. *Id.* at 222. The Attorney General emphatically did *not* state that employees may only pursue claims under the FLSA or the MWHL, but not both. Given the Attorney General's clearly stated intention that the MWHL would effectuate the broader goal of providing the "highest minimum wage and the lowest maximum work week" available, it makes little sense to interpret his comments as somehow limiting the enforceability of the MWHL.

## C. The Maryland State Personnel & Pensions Article Does not Limit the Applicability of the MWHL.

Defendant argues that its interpretation of the 1970 Opinion is "consistent with the statutory provisions which the Maryland General Assembly has enacted to address overtime for State employees." (ECF No. 76-1, at 6.) Defendant refers to the State Personnel & Pensions Article of the Maryland Code § 8-302. This provision governs compensation for state employees engaged in overtime work and sets forth that state employees under its purview "are entitled to the greater of: (1) the benefits that are provided in this subtitle; or (2) to the extent applicable, the benefits required by the federal Fair Labor Standards Act." Md. Code Ann., State Pers. & Pens. § 8-302.

This provision has absolutely no bearing on this matter. § 8-302 governs employees subject to the salary authority of the Maryland Secretary of Budget and Management. The Plaintiffs in this case are private employees pursuing remedies under the MWHL, not under a statute governing the pay of state employees. Moreover, even this provision does not explicitly

provide that state employees are limited to pursuing state or federal rights, but not both. Rather, as the Maryland Court of Appeals has held, § 8-302 only reinforces the basic precept of the Supremacy Clause, that "federal law is the supreme law of the State, anything in the laws of [Maryland] to the contrary notwithstanding." *Maryland Military Dep't v. Cherry*, 382 Md. 117, 124-25, 854 A.2d 1200 (2004).

In summary, Defendant's reference to decades-old non-binding opinions from a former Maryland Attorney General, and unrelated Maryland statutory authority is without merit and would be inconsistent with highly persuasive, unanimous precedent issued by this Court and other state and federal courts. There is simply no basis for departing from these precedents, and thereby establish law contrary to the terms of the MWHL. Accordingly, Defendant's Motion to Dismiss Counts II and III (ECF No. 82) is DENIED.

## III.     Plaintiffs have Satisfied the Requirements of Class Certification.

Previously, this Court granted Plaintiff's Motion for Conditional Certification of a collective action under the FLSA. Now, Plaintiffs seek class certification for their state law claims under Rule 23 of the Federal Rules of Civil Procedure. The proposed class is defined in a similar manner as the collective action conditionally certified by this Court:

> All persons that work or worked for Defendant as a caregiver in the Individual Support Services and Personal Support Services programs between July 1, 2014 and the present, who worked over forty (40) hours in a workweek, and were not compensated at the overtime rate of "time and a half" their regular rate.

> (Pls.'s Mot. for Class Certification at 2-3, ECF No. 72-1.)

To obtain class certification, Plaintiffs must satisfy all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. As Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that common questions of law

or fact predominate and that a class action is the superior vehicle for this litigation.

Plaintiffs easily satisfy these requirements. As further explained below, Plaintiffs seek to represent nearly two-hundred employees, all of whom performed the same work for the same employer, and all of whom credibly claim they have not been paid at the hourly rate the MWHL requires for overtime work. This is precisely the type of action best suited for class treatment.

## A. Plaintiffs Satisfy the Numerosity Requirement.

Under the "numerosity" requirement of Rule 23(a)(1), Plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable." No particular number of class members is needed to satisfy this requirement. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Generally, a class with as few as "25 to 30 members raises a presumption that joinder would be impracticable." *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 498 (D. Md. 2010) (quoting *Dameron v. Sinai Hosp. of Balt., Inc.,* 595 F.Supp. 1404, 1408 (D.Md.1984)).

In this case, the parties have identified 192 members of the putative class of caregivers in Defendant's ISS and PSS programs. A class this large well exceeds the numerosity requirement. Despite this large number, Fidelity argues that joinder is not impracticable. Citing no legal authority, Fidelity contends that because the class members could have joined the collective action, their joinder cannot now be considered "impracticable" for purposes of Rule 23(a). This argument misses the mark. The numerosity requirement is satisfied when joinder would be difficult or impracticable, not impossible. *Calderon v. GEICO Ins. Co.*, 279

F.R.D. 337, 346 (D. Md. 2012) (citation omitted). The FLSA's collective action procedures merely render their joinder possible, not practical, for purposes of Rule 23(a). Joining 192 caregivers would surely produce serious logistical problems. Accordingly, this Court finds that the numerosity requirement is satisfied even though all 192 class members had an opportunity to opt-in to the FLSA collective action.

## B. Commonality.

To satisfy Rule 23(a)(2)'s commonality requirement, Plaintiffs must demonstrate that "there are questions of law or fact common to the class." The United States Supreme Court has noted that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart*, 564 U.S. at 349-50 (citation omitted). Even a single common question is sufficient, so long as the "determination of its truth or falsity will resolve an issue that is central to the validity of each and every one of the claims in one stroke." *Id.* One such common question is "whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013) (unpublished) (citation and quotation omitted); *see also Lee v. JLN Construction Services, LLC*, RDB-17-2765, 2019 WL 3869412, at *3 (D. Md. Aug. 16, 2019) (characterizing the failure to pay overtime for similar services as "the same injury"); *Calderon v. GEICO General Ins. Co.*, 279 F.R.D. 337, 346 (2012) (finding that alleged uniform classification of Security Investigators as exempt from overtime provisions of state and federal law satisfied commonality requirement).

Defendant appears to concede that Plaintiffs have satisfied the commonality requirement, as it advances no arguments with respect to this issue. In this case, Defendant's

alleged policy of withholding overtime pay from employees in the ISS and PSS programs supplies the requisite common question of law and fact. The validity of each class member's claim will rise and fall on whether the employees were performing compensable work, and whether Defendant in fact adequately compensated them for that work. Accordingly, this Court finds that the Plaintiffs have satisfied the commonality requirement.

## C. Typicality.

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) tend to merge. "Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected . . . ." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). Essentially, the typicality requirement ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 340. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so goes the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citing *Broussard*, 155 F.3d at 340).

Defendant appears to concede that Plaintiffs have satisfied this requirement, and for good reason. In this case, all plaintiffs have suffered the same injury: inadequate compensation for overtime work. The class representatives worked for the same company, performed the

same job, complain that they have worked well in excess of 40 hours per week, and allege that Defendant has failed to pay them at the rate mandated by state law for that work. Their uniformity of claims results in perfectly aligned interests. As such, this Court finds that the typicality requirement has been satisfied.

### D. Adequacy of Representation.

The final prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement consists of two components. First, the class counsel must be qualified, experienced, and able to conduct the litigation. *Cuthie*, 743 F. Supp. 2d at 499. Second, the named plaintiffs' interests must not be opposed to those of other class members. *Id.* The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. at 157-58 n. 13). Such conflicts "must be more than merely speculative or hypothetical;" rather, they "must be fundamental" and "go to the heart of the litigation." *Gunnells*, 348 F.3d at 430-31 (citations omitted).

Fidelity does not challenge the competency of class counsel. This Court has no difficulty accepting that the proposed class counsel, attorneys from the Law Offices of Peter T. Nicholl, are capable of litigating this matter. In fact, this Court has recently permitted attorneys from the same law firm to represent the interests of another class alleging unpaid overtime. *See Lee,* 2019 WL 3869412, at *4.

Fidelity focuses on a perceived conflict between the class representatives who have joined the FLSA collective action and the remaining members of the class who have not. This

supposed rift arises solely from Fidelity's claim that any settlement offer it is likely to make to the opt-in plaintiffs would "be premised on the FLSA claims being far more likely to succeed than the state law claims." (ECF No. 80, at 8.) As a result, Fidelity argues, Jones and the opt-in plaintiffs will be tempted to settle their claims and leave the remaining class members in the lurch. This argument flows from Fidelity's meritless contention that Plaintiffs' state law claims are incompatible with the FLSA and must be dismissed. Hypothetical settlement offers premised on Defendant's faulty legal theory cannot render the class representatives inadequate. Accordingly, this Court finds that the adequacy requirement has been satisfied.

### E. Rule 23(b)(3) Requirements

Having determined that the Plaintiffs have satisfied Rule 23(a)'s requirements, the Court now turns to Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as "predominance" and "superiority."

#### 1. Predominance.

The predominance requirement of Rule 23(b)(3) contemplates a balancing between common and individualized issues. This balancing is qualitative in nature, not quantitative. *Gunnells v. Healthlpan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003). Accordingly, predominance may be satisfied even when some individualized inquiry is required. *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013) (unpublished) (*citing Gunnells*, 348 F.3d at 429). Where "common questions predominate regarding liability . . . courts generally find the

predominance requirement to be satisfied even if individual damages issues remain." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010).

Plaintiffs contend that the predominant question is "whether the class was paid overtime wages." (ECF No. 72-1.) Although the total hours worked by each class member is bound to fluctuate on an individual basis, Plaintiffs maintain that their overtime hours can be easily assessed through the Defendant's timesheet records which Defendant admits remain in its possession. (Oparah Dep. 72:16-17; 94:14; 95:16-18.) As only one theory of liability dominates this case—the failure to pay overtime hours—and individual damages would be easy to ascertain by reference to Defendant's payroll records, this Court finds that the predominance requirement has been satisfied.

**2. Superiority.**

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four factors for this Court's consideration when assessing this requirement:

(1) The interests of the members of the class in individually controlling the prosecution of separate actions;
(2) The extent and nature of other pending litigation regarding the controversy by members of the class;
(3) The desirability of concentrating the litigation in a particular forum; and
(4) The difficulties likely to be encountered in management of the class.

In this case, a class action is the most appropriate mechanism for adjudicating Plaintiffs' claims. Fidelity has admitted that it did not pay overtime wages to a large class of employees who performed the same work. (Oparah Dep. 48:16-20; 50:2-8.) As this Court has recently remarked, cases of this sort present the "typical scenario where a class action is superior to

separate actions because there is little incentive for class members to pursue their rights individually." *Lee*, 2019 WL 3869412, at *5. There is evidence in the record that some members of this class fear that Defendant will retaliate against them. These fears are made credible by evidence that the plaintiffs who were still employed by the Defendant at the time they joined this lawsuit have since been terminated or stopped receiving assignments. (Walabai Decl. ¶ 26.) The prospect of retaliation against employees for joining this lawsuit only heightens the need for class-wide resolution of this matter. Accordingly, this Court finds that the superiority requirement has been satisfied.

**F. As This Court has Repeatedly Held, Plaintiffs may Maintain a Collective Action Under the FLSA and a Class Action Under the MWHL.**

Throughout its Response to Plaintiffs' Motion for Class Certification, Fidelity repeatedly argues that Plaintiffs may not maintain both a class action on their state law claims and a collective action under the FLSA. As Defendant recognizes, these arguments have been persuasively rejected by this Court on previous occasions. *See* Calderon, 279 F.R.D. at 340-43; *Butler*, 800 F. Supp. 2d at 675-76. This Court discerns no reason to disturb these precedents and hereby adopts their reasoning.

**IV. Plaintiffs are Entitled to Summary Judgment on Defendant's Affirmative Defenses.**

Plaintiffs move for Summary Judgment with regard to Defendant's affirmative defense that their claims are barred in whole or in part by the companionship services exemption to the FLSA and Maryland state law. (ECF No. 77.) The parties agree that Maryland's companionship services exemption was repealed prior to the statutory period relevant to this case. Accordingly, the only issue for this Court's determination is whether the Defendant

qualifies under the companionship services exemption under the FLSA. Federal law exempts from its overtime payment requirements "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves . . ." 29 U.S.C. § 213(a)(15). The term "domestic service employment" is defined as "services of a household nature performed by an employee in or about a private home." 29 C.F.R. § 552.3. The Department of Labor regulations describe the features of a "private home" as follows: "a fixed place of abode or a temporary dwelling as in the case of an individual or family traveling on vacation. A separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel may constitute a private home . . . Employees employed in dwelling places which are primarily rooming or boarding houses are not considered domestic service employees." 29 C.F.R. § 552.101(a)-(b). The regulations admit of no set definition; courts make the determination on a case-by-case basis. *See Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 301 (D. Md. 2007) (collecting cases).

In this case, there is no dispute that the Plaintiffs were *not* employed to work in private homes, and therefore the Defendant cannot claim the "companionship services" exemption. Fidelity stipulated that its clients in the ISS and PSS programs do not reside in "private residences." Stipulation at ¶¶ 1,2 (ECF No. 72-5.) The deposition testimony of Defendant's own corporate designee makes abundantly clear that Defendant exerted absolute control over the properties in which its clients received services in the ISS and PSS programs. As previously discussed, Fidelity's clients reside in these apartments for the specific purpose of receiving care from Fidelity. (Oparah Dep. 18:3-21.) Once Fidelity's services end (*e.g.*, should the client wish

to discontinue care), they must vacate the premises. (*Id.* at 27:3-13.) Fidelity manages the apartments (*Id.* at 14:20-15:3; 20:16-20), cleans them (*Id.* at 15:7-18), furnishes them (*Id.* at 18:20-21), and pays the rent and other associated bills. (*Id.* at 18:8-15.) Oparah's vague declaration that clients "often contribute to or pay the utilities and rent for the leased apartments as well as contributing other items to the residence" does not change this calculus. (Oparah Aff. ¶ 4.) The totality of her undisputed testimony indicates that all of the ISS and PSS clients lived in the Fidelity apartment units for the sole purpose of receiving Fidelity's services. Accordingly, Plaintiffs are entitled to Summary Judgment on Defendant's affirmative defense under the companionship services exemption.

## V. Plaintiffs are not Entitled to a Finding of Liquidated Damages at This Time.

Plaintiffs also seek an award of Summary Judgment with respect to their claim for liquidated damages. The FLSA permits an award of liquidated damages in an amount equal to the unpaid overtime compensation. 29 U.S.C. § 216(b). An employer may avoid the imposition of liquidated damages when the "act or omission giving rise to the action was in good faith and that [it] had reasonable grounds for believing that [its] act was not a violation." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). This Court generally refrains from awarding liquidated damages before determining liability. *See, e.g., Vanegas v. Diaz Granados, Inc.*, PWG-15-2298, 2017 WL 345855 (D. Md. Jan. 24, 2017) (resolving issues of liability and damages in same opinion).

In this case, there has been no finding of liability on behalf of Defendant, and any damages associated with the alleged overtime violations have yet to be calculated. Plaintiffs do not move for Summary Judgment on the merits of their overtime claims. (Pls.'s Mot. for

Summ. J., ECF No. 77; Proposed Order, ECF No. 77-2) This Court will reserve issues of damages after a decision on liability has been reached.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Class Certification (ECF No. 72) is GRANTED; Defendant's Motion to Strike Untimely Opt-in Plaintiffs (ECF No. 75) is DENIED; Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 76) is DENIED; and Plaintiffs' Motion for Summary Judgment (ECF No. 77) is GRANTED IN PART AND DENIED IN PART. Specifically, Plaintiffs are entitled to Summary Judgment on Defendant's affirmative defense as to the companionship services exemption, but not entitled to a finding of liquidated damages at this time.

A separate Order follows.


Dated: August 30, 2019


_____/s/_____
Richard D. Bennett
United States District Judge